[Civ. No. 9340. First Appellate District, Division Two.—May 1, 1934.]

E. J. DURRELL, Respondent, v. LEONARD LEWIS BACON, as Administrator, etc., et al., Appellants.

Lucius K. Chase and Chase, Barnes & Chase for Appellants.

William L. Waters for Respondent.

BURROUGHS, J., *pro tem.*—The plaintiff and Anna E. Bacon were married on March 16, 1876, and lived together as husband and wife until the death of the latter on March 11, 1925. The plaintiff was a day laborer. His wife graduated from the public schools of New York and became a school teacher. During their married life the wife received all of the money of the community, banking and disbursing it, and this continued throughout their married life. Shortly before May 25, 1891, they had a talk about buying a home. They had lived in rented houses theretofore. The plaintiff testified that he told his wife that they had no money for

such purposes; she replied that they had, and called to his attention that her brother Will had left her a thousand dollars in his will; that her mother Mrs. Betsy Bacon had $800. Mrs. Bacon had been living with them between three and four years and expected to stay with them the rest of her life; that she would put her money in with theirs and that they would take care of her as long as she lived; that he replied to his wife that he had nothing to do with that money, and that his wife replied, " 'Now,' she said, 'Jimmy, look here; there is nothing of that kind; what is mine is yours and what is yours is mine,' and she said, 'this money will go into a home for us; it is just as much yours as mine'. She said, 'that will make us a start at buying a home and then we can go on, whatever the balance is we can pay that as rent in buying the property'. I told her 'all right, if you want to do that, I will guarantee to it and go ahead'." Shortly after this first conversation and before the property was purchased, another conversation was held between the spouses and Mrs. Bacon (the mother of Mrs. Durrell) about the purchase price of the land. Mrs. Bacon said she would put in the $800 "and live with us as long as she lived". The evidence further discloses that at the time of the last conversation Mrs. Bacon had lived with the spouses and that she continued to live with them until the time of her death, a total of ten years, without any compensation other than the $800. Some time later after the above talks, another conversation was had by the plaintiff, his wife and a Mr. Elwood, a real estate agent, about buying the property for the sum of $2,000. This property was subsequently deeded to Mrs. Bacon, and concerning this conveyance the plaintiff said: "I said to my wife like this, 'Mrs. Durrell, now, here, in making out these deeds, make them out to Ma, Mrs. Betsy Bacon', . . . 'if anything should happen to you and I, and they were in your name', I said, 'put the deeds in Mrs. Bacon's name', and she acquiesced and said, 'I think it is a good idea to put them in,' and that was done." The plaintiff further testified that there was a balance of $200 due on the purchase price of the lot which was paid for out of his earnings at the rate of $15 per month; also that he expended over $2,500 of community funds, including labor, in placing improvements on the place. The witness further testified that Will Bacon, his wife's brother,

lived with them for a year without paying for any board and lodging. Plaintiff further testified that he bought lots 6 and 7 of the Hardin tract and paid for them out of a judgment for $4,200 which he had obtained in a lawsuit, and the money belonged to him.

Now, regarding lot 2. The title to this lot was conveyed from Mrs. Mary S. King, a sister of the plaintiff, to Mrs. Betsy Bacon. The plaintiff testified that Mr. Scott, who owned the lot, wanted $3,000 for it, but that that was too much, and he finally got a price on it of $2,800. A day or so before they completed the purchase of this lot 2, they had a further conversation with Mrs. King in which she (Mrs. King) said that she was leaving a thousand dollars to plaintiff, her brother, and that she would give the thousand dollars toward purchasing the lot. It was further testified that the husband and wife had $600 in the bank from the earnings of the plaintiff and that a mortgage on the property of $1200 was assumed by them and this constituted the purchase price of the lot.

Miss Hickman, a real estate agent, through whom they purchased the property, was told by plaintiff, in the presence of his wife and Mrs. King, to put the title in the name of Mrs. Betsy Bacon, and "We received the one thousand dollars at once." Mrs. King was very ill and died shortly after the execution of the deed. Shortly before the death of Mrs. Durrell the plaintiff testified that she told him "She had been a bad girl. For twenty years she had made her will and never told me about it. I told her that was all right. 'Now,' I said, 'Anna tell me how you made it?' and she told me, she said, 'You have the use of the property as long as you live, then it goes to Edward and then to his children.' Then I asked her if she would want me to use her that way. I said, 'This property was ours. You know you told me when we first bought this property, when we entered into this that this property was to be community property. It is ours, not yours. It is ours. Now,' I said, 'do you think that is using me right?' She burst out crying, and I hugged her up and I said, 'We will not talk no more about it,' and we didn't. We had another talk about ten days before she died, she said, 'Jimmy, I want to talk with you,' she said, 'everything is all right and I don't want you to feel hard toward me'. I said, 'No, I don't.'

She said, 'Now, everything is all right;' she said, 'This property has been all fixed up, everything has been settled and everything is yours,' and she says 'Edward will turn everything over to you as quick as I am gone.' '' In this same conversation he tried to prevail upon his wife to transfer title to him, but she said ''No, he will turn everything over to you as quick as I am gone.'' In another conversation with his wife, in the presence of Mrs. Goodwin, who was a sister of the plaintiff, the plaintiff testified: ''She told me, 'Jimmy, everything is yours. Now everything is all right,' and she said, ' . . . you don't believe me, but Edward has promised faithfully that he will turn everything over to you as quick as I am gone. Now,' she said, 'everything is all right'. I turned then and went out of the room.'' The above conversation took place in the room where Mrs. Durrell was lying sick, Mr. Bacon, the brother of Mrs. Durrell, went into the sick room and when he came out he slapped plaintiff on the shoulder and said: '' 'Jimmy, don't bother her . . . as quick as she is gone I will turn everything over to you . . . '' I said, 'Come here, I want to talk to you, . . . '' Just as we got into the other room the doorbell rang and I went to the door and I never had any more conversation. In the conversation when we were figuring how to obtain money to buy the place and we were talking of the thousand dollars coming from Will Bacon, Mrs. Durrell said, 'Now, this thousand dollars coming from Will,' Will lived with us for a year or more and she said, 'Now, we took care of him and done the very best we could. No,' she said, 'Jimmy, that is community property. It goes to buy this home.' My wife always spoke of this property as ours.'' There was also a further conversation between the plaintiff and his wife in the presence of a Mr. Patterson, a builder, in which conversation Mrs. Durrell said that she was very sick and that ''when she was gone it would all belong to Jimmy''. She repeated that two or three times. The subject under discussion at that time was putting a building on this lot. There was also a conversation between a Mrs. Daisy Howard, a niece of Mr. Durrell, and also another conversation with a Mrs. Warboin, in which Mrs. Durrell said in effect that all of the property would belong to Jimmy when she was gone.

We have set forth at considerable length the evidence, including several conversations, so that we may pass upon the objections made by the appellants.

Appellants contend that the parol testimony above set forth varies the terms of the written instrument by which Anna Durrell received title to the land and that under section 164 of the Civil Code the presumption arises that the property conveyed to Anna was her separate property, and such presumption is conclusive. Appellant has cited a number of cases in support of this claim; the principal one being *Donze* v. *Donze,* 88 Cal. App. 769 [264 Pac. 294], which involved the division of property in a divorce action. The husband contended that a certain piece of property consisting of a lot of land was community property. The evidence disclosed that it had been conveyed to his wife by a third person, under the specific direction of the husband; it was conveyed to her as her separate property, and he had a clause inserted in the deed for that particular purpose, and he stated that it was a gift to his wife. Under such circumstances, the court held that the property was, under section 164 of the Civil Code conclusively presumed to be her separate property as a gift because of the intent of the husband that it should be her separate property.

In the case at bar there is substantial evidence that the plaintiff never knew that the deeds conveying the real estate to his wife contained a recital that it was her separate property, until he was so informed during the progress of the first trial of this action. In each conversation the plaintiff had with his wife on the subject, the latter told him that the property belonged to the community. The evidence above cited also shows that the property was paid for partly with the separate funds of the husband, partly with the separate funds of the wife, and the larger part from the community funds of both, and that it was intended and agreed by the husband and wife that it should be community property. We think the case of *Fanning* v. *Green,* 156 Cal. 279 [104 Pac. 308], is in point. It is there said: ''It is clear that there can be no executed gift in the absence of any intention to give on the part of the donor. It is true that the facts and circumstances of a transaction may be such as to practically compel the conclusion that

a gift was intended, and to render worthless any subsequent statement to the contrary on the part of the donor. But no such effect, we are satisfied, must necessarily be given to the mere fact that, in the case of the purchase of real property with community funds, the husband has directed that the deed shall run to the wife as grantee. There is nothing in the nature of such a fact that renders it consistent only with the theory of gift, and other facts and circumstances may so tend to show another reason than the desire and intent to make a gift as to furnish ample warrant for a conclusion that no gift was intended, and, therefore, that there has been no 'executed gift'." It is further said on page 283 of the case last cited that "The well-settled rule is, as stated in *Nilson* v. *Sarment*, 153 Cal. 524, 530 [126 Am. St. Rep. 91, 96 Pac. 315], 'where a husband purchases property with community funds, and directs the conveyance to be made to his wife, *with the intent to make it her separate property,* the deed will operate to vest the property in her as her separate estate'. The *'intent'* to make it hers, her separate property, is a material factor in such a case, and while such intent may and possibly must, be inferred where there is no other evidence than that showing the mere direction by the husband, it may also be shown not to have existed by any competent evidence." The further citation from *Fanning* v. *Green, supra,* applies in the instant case: "In the case at bar there is, in our opinion, other evidence that fairly and reasonably warrants an inference on the part of the trial court to the effect that no gift was intended. The indirect evidence by which the presumption of separate property may be controverted may consist in part of inferences (Code Civ. Proc., sec. 1957), deductions 'which the reason of the jury' (or trial judge) 'makes from the facts proved' (Code Civ. Proc., sec. 1958)." See, also, *Maguire* v. *Cunningham*, 64 Cal. App. 536 [222 Pac. 838]; *Durrell* v. *Bacon*, 119 Cal. App. 31 [5 Pac. (2d) 961]; *Estate of Cronvall*, 220 Cal. 503 [31 Pac. (2d) 372]. In each one of the foregoing cases parol evidence was admitted for the purpose of disputing the presumption of section 164 of the Civil Code that where the instrument contains a provision that the property is conveyed to a married woman as her separate property, it is in fact property of the community. Under the rule

established by the foregoing cases, we are of the opinion that the parol evidence here admitted was properly admitted for the purpose of proving that it was community property.

Appellants' claim of laches on the part of the plaintiff does not appeal to us as being sound because his wife did not claim the property as her separate estate until shortly before she died. Further, it was not called to the attention of the plaintiff and he did not know that there was inserted in the deed to his wife from Mrs. Bacon, a clause stating that it was her separate property.

Appellants also complain that the conversations between Mr. and Mrs. Durrell were privileged communications under the provisions of subdivision 1 of section 1881 of the Code of Civil Procedure. *Savings Union Bank etc. Co.* v. *Crowley*, 176 Cal. 543 [167 Pac. 67], we believe, is analogous in this behalf to the present case and is authority for the admission of the evidence objected to in this case.

The evidence admitted being competent to prove the source from which the purchase price of the property was derived, and also that it was not the separate property of the wife, such evidence was competent in an ordinary action to quiet title.

The parol evidence having been properly admitted, the record discloses the following state of facts: That the property was purchased with both the separate and community funds of both husband and wife, and under an agreement between them that it should be community property and title was taken both in the name of Mrs. Bacon and in the name of the wife as a matter of convenience. Under such circumstances the judgment must be affirmed and it is so ordered.

Sturtevant, J., and Spence, Acting P. J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 29, 1934.

Preston, J., dissented.