[L. A. No. 21261. In Bank. Feb. 16, 1951.]

Estate of TOORIG REIZIAN, Deceased. CHARLES G. BALOIAN, Petitioner and Respondent, v. E. M. JOHNS, as Coadministrator, etc., Appellant; HENRY ARTEN BALOIAN, Contestant and Respondent.

William Kinley and George Wise for Appellant.

Roland G. Swaffield for Respondents.

EDMONDS, J.—Khosrof Reizian predeceased his wife Toorig. Real property which was purchased when they were living together as husband and wife is claimed by Henry Baloian, her father, and by the heirs of the husband's mother. The appeal from the decree in favor of Baloian presents for decision the question as to whether the evidence supports the findings in regard to the source of the property.

Khosrof and Toorig were married in 1918. A house and lot, known as the "home place," was purchased in 1936 and conveyed to "Toorig Reizian a married woman." Until the death of Khosrof in 1947, he and his wife resided on this property. Before the administration of his estate was completed, his widow died. In the petition for distribution of

her estate, the administrator asked that the residence be distributed in accordance with section 228 of the Probate Code, one-half to Henry Baloian, Toorig's father, and one-half to the estate of Marian Reizian, her mother-in-law. The father objected to the proposed distribution, claiming that the realty passed to him as the separate property of the decedent.

The evidence as to the source of the consideration paid for the real estate may be briefly summarized as follows: Khosrof was a retail merchant; his wife assisted her husband in the operation of his business and carried on her household duties as well. She had no other outside business interests. Prior to her marriage, she owned approximately $2,400 in United States Postal Savings certificates. There is no evidence as to what became of them after her marriage.

The purchase price of the house was $3,300. Thirteen hundred dollars was paid in cash; the balance of $2,000 was represented by a promissory note secured by a trust deed. Both the promissory note and trust deed were executed by Toorig alone. Approximately three years later, the holder of the promissory note signed a receipt showing that he had received $2,000 from Mrs. Reizian. In 1945 and 1946, she secured policies of insurance upon the property, issued to her as its sole owner.

In 1945, husband and wife executed mutual reciprocal wills at the same time. These wills, identical in language, were prepared by the same attorney. By them, each bequeathed to the other, as the sole beneficiary, all of their property. Each will contained the following statement: "I further declare that all of the property of which I am possessed is community property."

Upon the death of Khosrof, his wife became the owner of certain property, title to which they had held in joint tenancy. She was advised by her attorney as to the necessary data for an affidavit to be used in connection with the determination of inheritance taxes. The attorney then told her that if her husband had paid part of the purchase price of the property here in controversy, perhaps, for tax purposes, she should disclose that fact as the basis for clearing the title at a later time. In that event, the attorney said, the affidavit concerning the community property of herself and her husband which was sent to her for execution should be answered accordingly. Her response was that the attorney knew the source of the money which was paid for the house. "[I]t came from the

business," she said. "That's the only place that money would come from."

E. M. Johns, the appellant, is co-administrator of the estate of the husband's mother. He was a close friend of the Reizians for some 30 years. As a witness on behalf of the mother's heirs, he was questioned in regard to a conversation with Toorig in which she discussed her property. His reply was that, "in front of the revenue officer for tax purposes," she was asked, "where this money come from when you buy the house, 160 Laverne, and she admit all the money come from the business on Pine Avenue."

The superior court determined that the realty was the separate property of Toorig, and ordered distribution of the proceeds of its sale to Baloian, the objector, in accordance with section 225 of the Probate Code. From this portion of the decree of partial distribution, Johns has appealed, contending that: (1) There is no substantial evidence to support the determination that the realty was the separate property of Toorig; and (2) The mutual reciprocal wills of the decedents conclusively establish that the residence was community property.

The material portions of section 228 of the Probate Code read as follows: "If the decedent leaves neither spouse nor issue, and the estate, or any portion thereof was community property of the decedent and a previously deceased spouse, and belonged or went to the decedent by virtue of its community character on the death of such spouse, or came to the decedent from said spouse by gift . . ., then one-half of such community property goes to the parents of the decedent in equal shares, or if either is dead to the survivor . . ., and the other half goes to the parents of the deceased spouse in equal shares, or if either is dead to the survivor. . . ."

In determining the character of property for the purpose of applying sections 228 and 229 of the Probate Code, it is the source of its acquisition, and not the nature of its ownership immediately before death, which is controlling. (*Estate of Abdale*, 28 Cal.2d 587 [170 P.2d 918]; *Estate of Perkins*, 21 Cal.2d 561 [134 P.2d 231]; *Estate of Rattray*, 13 Cal.2d 702 [91 P.2d 1042].) Baloian relies upon the presumption of section 164 of the Civil Code as proof that its source was the separate property of his daughter. As further evidence of that fact, he points to testimony that the purchase

money note and trust deed were signed only by Toorig, the receipt for payment of the note was in her name only, and two insurance policies were issued to her as the sole owner of the property.

Section 164 of the Civil Code provides that whenever a married woman acquires property by an instrument in writing, it is presumed to be her separate property, unless a contrary intention is expressed in the instrument. The purchase price of such property may have been paid from funds which were her separate estate or from community funds or the separate property of the husband. In the latter event, the husband may or may not have intended to make his wife a gift of his separate property or his interest in the community funds. However, unless he can show the absence of a donative intent, the husband may not set aside a transfer of such property made by his wife (e.g., *Hogevoll* v. *Hogevoll*, 59 Cal.App.2d 188 [138 P.2d 693]; *Horsman* v. *Maden*, 48 Cal. App.2d 635 [120 P.2d 92]; *Durrell* v. *Bacon*, 138 Cal.App. 396 [32 P.2d 644]; *Estate of Nelson*, 104 Cal.App. 613 [286 P. 439]; *Dale* v. *Dale*, 87 Cal.App. 359 [262 P. 339].)

■ Regardless of the husband's intent, if it is clear that the source of acquisition was either his separate property or community property, upon the death of the wife whose husband has predeceased her, the property standing in her name will be distributed according to the provisions of section 228 or section 229 of the Probate Code. ■ In other words, section 164 of the Civil Code creates no presumption as to the source of acquisition of property.

■ The decisive question, then, is whether, excluding the inapplicable presumption, there was any evidence sufficient to sustain the determination that the realty was acquired from Toorig's separate property. The record shows without conflict that at the time of her marriage she had $2,400. Although there is no direct evidence connecting that sum with the purchase of the realty some 18 years later, all documents concerning the property were executed by her alone. The $2,000 purchase money note and the trust deed securing it were executed only by her. The receipt issued upon payment of the note was made out to her. The insurance policies named Toorig as the sole owner, and receipts for the payment of premiums were in her name alone. Although the title to the property gives rise to no presumption as to the source of the funds with which it was purchased, it is nevertheless an evidentiary fact of probative value. In the face of these

undisputed facts, an appellate court cannot say that there is no evidence upon which the decree of partial distribution may be sustained.

It is argued that the mutual and reciprocal wills of Khosrof and Toorig constitute an agreement between them that their property was community in nature. But assuming that those wills effected a transmutation of the property here in controversy, they did not change, and could not change, the source of the consideration for its purchase which is the controlling factor in this proceeding.

The decree is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.