[Civ. No. 21247.    First Dist., Div. Two.    Jan. 20, 1964.]

Estate of CARL NORMAN NELSON, Deceased. LORRAINE NELSON, Petitioner and Respondent, v. EVELYN KING, Contestant and Appellant.

Carl B. Shapiro and Hallinan, Shapiro & Hallinan for Contestant and Appellant.

Jacob L. Karesh for Petitioner and Respondent.

TAYLOR, J.—This is an appeal from an order of the probate court adjudging a premarital settlement agreement invalid, holding an apartment house on Church Street in San Francisco, the chief asset of the estate, to be community property, and setting it apart as a probate homestead for the widow, the respondent, Lorraine Nelson.[1] The appellant, Evelyn King, a sister of the deceased, contends that the evidence does not support the trial court's determinations.

Viewing the evidence in a light most favorable to the respondent, as we must on appeal, the material facts are as follows: the deceased, Carl Norman Nelson, and the respondent were married on February 21, 1949. About two weeks before the wedding, Nelson asked the respondent to sign an agreement providing that she would not seek alimony or support in the event of a divorce, that she would not seek a family allowance or assert any interest in her husband's estate, and that her husband would be responsible for only $150 attorney fees and costs. Nelson, an experienced real estate broker, told her he wanted her to sign the agreement because he had had trouble with his first wife. He assured her when he asked her to sign the agreement that it did not mean anything during the marriage. Nelson was about 50 years old; the respondent was 22. The respondent did not understand the legal effect, contents or significance of the agreement but did not question Nelson about it because she trusted him. The agreement was not acknowledged as required by section 178 of the Civil Code. The respondent did not receive

---

[1]The notice of appeal initially specified that the appeal was also taken from an order denying the appellant's petition for removal of the widow as administratrix of the estate. This appeal has since been abandoned.

a copy of the agreement until it was recorded in January, 1958.

At the time of the marriage, Nelson owned the Church Street property as his separate property, and he completed the 30-unit apartment building thereon shortly thereafter. Mrs. Nelson was inexperienced in business matters and her husband undertook to teach her about apartment house management and bookkeeping. Mrs. Nelson worked as her husband's secretary and managed the apartment building during the marriage, and has continued to do so. After Nelson's commitment to the state hospital in 1958, she was appointed as guardian of his estate and continued to take care of all business affairs. Nelson frequently referred to the property as belonging to both of them. The couple filed joint federal and state income tax returns. Nelson repeatedly expressed his affection for his wife and his intention to provide for her, both orally and in writing.

Nelson's holographic will dated December 30, 1958, named Mrs. Nelson as sole beneficiary. The will was admitted to probate and Mrs. Nelson appointed as administratrix with the will annexed. The appellant filed a contest which is the subject of another appeal.[2] After Mrs. Nelson filed her petition for the probate homestead, the appellant filed her objections.

The first contention on appeal is that the evidence does not support the trial court's finding that the premarital agreement was invalid. There was ample evidence that Nelson misrepresented the agreement to his wife when he secured her signature and that he repudiated it by his acts and deeds and in writing thereafter. From the very date of the marriage to the date of the recordation of the agreement, the parties generally conducted their affairs as though no such agreement existed. The lack of Mrs. Nelson's acknowledgment is, in itself, sufficient to make the prenuptial agreement ineffective (Civ. Code, § 178).[3]  Furthermore, this contract tended to encourage and facilitate the dissolution of the marriage relationship and was contrary to public policy (*Whiting* v. *Whiting,* 62 Cal.App. 157, 167 [216 P. 92]).

It was unfair and the consideration to Mrs. Nelson exceedingly insignificant. She waived all of her marital rights

[2]This court denied the appellant's motion to consolidate the two appeals on September 10, 1963.

[3]This section requires that contracts for marriage settlements must be executed and acknowledged in the same manner as grants of land.

except the right to obtain a divorce, while Nelson reaped all of the benefits. ▇ Where the consideration to one party is so small as to shock the conscience of the court, the fact of inadequacy may be considered as a circumstance tending to support the claim of fraud (*Hilton* v. *Hilton*, 54 Cal.App. 142 [201 P. 337].) ▇ The advantages gained by Mr. Nelson over his young bride gave rise to a presumption of fraud and undue influence (*Weil* v. *Weil*, 37 Cal.2d 770, 788 [236 P.2d 159]; *Dale* v. *Dale*, 87 Cal.App. 359 [262 P. 339]). The appellant in asserting the effectiveness of the agreement must bear the burden of proving that it was fairly obtained (*Estate of Cover*, 188 Cal. 133-143 [204 P. 583]). The mere fact that Mrs. Nelson was so easily persuaded to give away her rights as a wife indicates that she did not realize their nature and value and the extent to which they were being impaired by the execution of the agreement (*Rottman* v. *Rottman*, 55 Cal.App. 624, 635 [204 P. 46]). Mrs. Nelson testified that if she had known she was waiving all of her marital rights, she would not have signed it. We find ourselves in complete accord with the trial court's determination that the prenuptial agreement was fraudulently procured, subsequently repudiated and should be set aside.

▇ The appellant argues that the trial court erred in finding that the apartment house was community property. The court found that, at the time of the marriage, the property was the separate property of the deceased but had subsequently been transmuted into community property by an executed oral agreement. ▇ The separate property of one spouse can be converted into community property by a mere oral agreement (*Woods* v. *Security-First Nat. Bank*, 46 Cal. 2d 697 at p. 701 [299 P.2d 657]; *Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757 [146 P.2d 905]; *Estate of Sears*, 182 Cal. App.2d 525 [6 Cal.Rptr. 148]). This transmutation may be proved by the acts of the parties and their conduct in dealing with the property (*Estate of Raphael*, 91 Cal.App.2d 931, 939 [206 P.2d 391]). No express or formal agreement is required (*Long* v. *Long*, 88 Cal.App.2d 544, 549 [199 P.2d 47]) if it may be fairly inferred from all the circumstances and evidence that a community interest was intended by the parties (*Linville* v. *Linville*, 132 Cal.App.2d 800, 802 [283 P.2d 34]). ▇ Nelson not only referred to the property as the mutual property of the parties but also frequently expressed a desire to provide for his wife. Furthermore, Mrs. Nelson's management of the property, the conduct of the

144

parties during the marriage, the joint state income tax returns filed from 1949 to 1952, at a time when the state did not permit such joint returns unless the income reported was community property, were additional evidence of an executed oral agreement. ██ Whether the statements and conduct of Nelson indicated an intent to transmute his separate property into a community interest was a question for the trier of fact (*Linville* v. *Linville, supra*) and we conclude that there is clearly sufficient evidence to support the court's finding in this regard.

██ The final contention on appeal is that the trial court erred in setting apart the entire Church Street apartment house as the widow's probate homestead. ██ In selecting a probate homestead, the probate court has wide discretion and its order will not be disturbed unless there has been an abuse of such discretion (*In re Walkerly*, 81 Cal. 579, 583 [22 P. 888]). ██ While there is no absolute rule to control the court in the selection of a homestead, yet it should consider, in the exercise of its judgment, the rights of creditors, the estate's financial status and the value of the homestead (*Estate of Claussenius*, 96 Cal.App.2d 600, 611 [216 P.2d 485]).

██ There are no creditors of this estate affected by the probate homestead except the appellant's attorney and his claim, based on an alleged oral contract with the deceased, has been denied by the respondent. ██ As to the value of the homestead, sections 661 and 668 of the Probate Code contain no limitations.[4] ██ The right of the applicant for a homestead is paramount to all others even though its assertion would absorb the whole estate (*Estate of Kennedy*, 157 Cal. 517 [108 P. 280, 29 L.R.A. N.S. 428]; *Estate of Barkley*, 91 Cal.App. 388 [267 P. 148]). ██ The court will give the homestead as great a value as possible considering the amount and condition of the estate (*Estate of Raymond*, 137 Cal.App.2d 134 [289 P.2d 890]). ██ Although we have found no case where the value of the homestead corresponded precisely to that in the instant case, we can find no abuse of discretion on this basis (cf. *Estate of Wells* (1905) 3 Cof. Prob. Dec. 229, homestead appraised at $30,000; *In re Walkerly* (1889), *supra,* homestead of $18,000 out of a $500,000 estate; *In re Smith* (1893) 99 Cal. 449 [34

---

[4]The respondent received an 89.52 per cent fee simple interest in the apartment house which was appraised at approximately $244,000.

P. 77], homestead worth $10,000 with annual rental of $5,100, out of $75,000 estate; *Estate of Levy* (1904) 141 Cal. 646, 653 [75 P. 301, 99 Am.St.Rep. 92], homestead valued at $17,500 constituted one-half of the estate). ▆▆ The jurisdiction of a probate court to set aside a homestead to the surviving widow is not subject to a condition that she does not have any other property or any other place to live as her right is independent of and in addition to any other right or property that she may have, whether acquired under the will of the deceased or otherwise. (*Estate of Ronayne*, 104 Cal. App.2d 53-58 [231 P.2d 105]).

▆▆ Appellant argues that the apartment building was not a proper probate homestead because Mrs. Nelson could only live in a portion of it. The fact that the Church Street apartment house was occupied by Mrs. Nelson and the deceased in his lifetime and could have been declared a homestead by the deceased is a fair test of the appropriateness of its selection (*Estate of Levy, supra*). ▆▆ If a building is the actual bona fide residence of the widow, she may legally select it and the land on which it is situated as a homestead, no matter how large (*Heathman* v. *Holmes*, 94 Cal. 291 [29 P. 404]). ▆▆ The fact that the other 29 apartments are rented to tenants is not determinative. In *Estate of Pickard*, 169 Cal. 162 [146 P. 425], the probate homestead consisted of a lot with a 12-family apartment building. The deceased and his wife had occupied one of the apartments as their residence and rented the others to tenants. In the *Estate of Levy, supra*, the probate homestead consisted of a lot containing two buildings, one of which was a residence, while the other contained flats and a store. The court held that the use of one of the buildings chiefly for business or rental purposes was not inconsistent with the right of homestead.

▆▆ Appellant's contention that Mrs. Nelson was not entitled to a probate homestead because she had at one time filed for divorce is likewise without merit. The widow's right to a probate homestead is not conditioned upon the existence of family status at the time of death (*Estate of Henningsen*, 199 Cal. 103, 106 [247 P. 1082]). Even if a divorce proceeding had been pending at the time of Mr. Nelson's death, it would not have defeated Mrs. Nelson's right to a probate homestead (*Estate of Caldwell*, 67 Cal.App.2d 652, 656 [155 P.2d 380]; *Estate of Fulton*, 8 Cal.App.2d 423 [48 P.2d 120]; *Estate of Ehler*, 115 Cal.App. 403 [1 P.2d 546].)

▆▆ Under the circumstances of this case, we have con-

cluded that the court in setting apart the probate homestead acted within the bounds of sound discretion and within the purview of section 661 of the Probate Code.

The orders appealed from are affirmed.

Shoemaker, P. J., and Agee, J., concurred.