461 P.2d 697

Raymond D. SCHOCK, Executor of the Estate of Raymond L. Schock, deceased, Appellant,

v.

Esther H. SCHOCK, a widow, Appellee.

No. 2 CA–CIV 707.

Court of Appeals of Arizona.

Division 2.

Dec. 2, 1969.

Rehearing Denied Jan. 7, 1970.

John William Johnson, Tucson, for appellant.

Karam & Martin, by Robert Martin, Nogales, for appellee.

HOWARD, Judge.

The parties to this appeal are Raymond D. Schock, executor of the estate of Raymond L. Schock, deceased, and Esther H. Schock, the decedent's widow. The appellant-executor seeks review of a probate court order setting apart a probate homestead to the appellee-widow. The major question to be resolved is whether the subject property was the community property of the decedent and his wife or the separate property of the decedent.

Briefly, the facts are as follows. The decedent and appellee were married in 1948 and so remained until the husband's death in 1967. No issue resulted from this marriage. At the time of the marriage, the decedent owned, free and clear, a ranch of approximately 640 acres in Elgin, Arizona. After the marriage, he continued to operate the ranch and the appellee was otherwise employed. The income and earnings of both were deposited in a common bank account and they resided on the ranch. Payment of their living expenses, home improvements and modifications, and real property taxes was made from this common bank account. Until 1961, all of the checks issuing from said account were executed by the decedent, the sole authorized signatory. In 1961, however, he became ill whereupon the appellee was authorized to and did issue checks. Beginning in 1962, all of the ranch property was rented to third persons with the exception of the residence, outbuildings, barns, and a portion of the contiguous land.

The decedent died testate in Santa Cruz County and administration proceedings were duly commenced. No declaration of homestead had been filed prior to his death, and the house and land set apart as a probate homestead for the use and benefit of the widow was included in the estate's assets. (The house had been the family home during the marriage and the appellee continued to live there after the decedent's demise.)

In 1968, the appellee filed a petition to set apart as a probate homestead certain specifically described property. The petition alleged, inter alia:

"6. That the property hereinabove described is the only real property owned by the decedent and the petitioner, either jointly or severally in the County of Santa Cruz, State of Arizona. That the said real property, throughout the marriage of your petitioner and the decedent was the home of your petitioner. That your petitioner continues to live and use the premises as her home, as she did throughout the lifetime of the decedent during the marriage. But although said property was owned by decedent prior to the marriage to your petitioner, the mortgage, expenses, taxes and costs of maintaining the same have been paid with community funds and your petitioner therefor alleges that the same is community property, or in the alternative that she has a lien upon said property for the proportion of the funds paid from community funds."[1]

The predicate for the "community property" allegation was that a transmutation of the subject property had occurred, i. e., its status as separate property had been changed to community property. The trial court apparently agreed, as evidenced by a recital in the amended judgment that the property was the community property of the parties at the time of the decedent's death. Thereupon, the court ordered that a designated parcel of approximately 120 acres, out of a total of 640 acres, together with the dwelling house thereon and appurtenances thereto, be set apart to the appellee as a homestead and that absolute title to the property be vested in her.

A.R.S. § 14–514 provides for the setting apart and selection of a homestead:

"A. After return of the inventory, the court may on its own motion or on petition therefor, set apart for the use of the surviving husband or wife, or, in case of his or her death, for the use of the minor children of decedent, all property exempt from execution, including the homestead, selected, designated and recorded, if such homestead was selected from community property, or the separate property of the persons selecting or joining in the selection thereof.

B. If a homestead has not been selected, designated and recorded, or, if the homestead was selected by the survivor out of separate property of decedent, decedent not having joined therein, the court shall, out of the community property, or if there is no community property, out of the property of the decedent, select, designate, set apart and cause to be recorded, a homestead for the use of the surviving husband or wife and the minor children, or if there is no surviving husband or wife, then for the use of the minor children."

A.R.S. § 14–516 provides for title to the property thus set apart:

"A. Property set apart for the use of the family, if the decedent left a surviving spouse and no minor child, is the property of the widow or surviving husband. If decedent left a surviving spouse and a minor child or children, one half of such property shall belong to the surviving wife or husband, and the other one half shall belong to the child, or if there are more than one, to the

---

1. A memorandum filed by the executor in opposition to this petition points out the pendency of another suit against the executor, brought by the widow, seeking to enforce a claim against the estate for reimbursement of community funds expended for the benefit of the decedent's property.

children in equal shares. If there is no surviving wife or husband, the whole of such property belongs to the minor child or children.

B. If the property set apart is a homestead selected from the separate property of decedent, the court may set it apart only for a limited period to be designated in the order, and the title vests in the heirs of decedent subject to such order."

The appellant-executor assails the probate order on various grounds. He contends that:

1. Property cannot be set apart for the use of the surviving spouse where there are no minor children.

2. The property, being the separate property of the decedent, could be set apart only for a limited time, as mandated by A.R.S. § 14–516, subsec. B.

3. The size of the probate homestead was improper.

■ Appellant argues that the benefit conferred by A.R.S. § 14–514 does not accrue to a surviving spouse *unless* there are minor children. We do not agree. As stated by our Supreme Court in In re Stanger's Estate, 75 Ariz. 399, 257 P.2d 593 (1953):

"The underlying purpose of these statutes [the counterpart predecessor of A.R.S. § 14–514] is to insure a home for the surviving spouse and/or children." 75 Ariz. at 402, 257 P.2d at 595.

See also, Varnes v. White, 40 Ariz. 427, 12 P.2d 870 (1932); In re Rosland's Estate, 76 Cal.App.2d 709, 173 P.2d 830 (1946); 3 Bancroft's Probate Practice §§ 700–01 (2d ed. 1950).

■ We agree with the appellant that the trial court's finding that the subject property was community property was incorrect. It is well settled that the character of property as separate or community is determined by its status at the time of its acquisition. Flynn v. Allender, 75 Ariz. 322, 256 P.2d 560 (1953); Porter v. Porter, 67 Ariz. 273, 195 P.2d 132 (1948). Furthermore, once its status is fixed, the prop-

erty retains said status unless it is changed by agreement or by operation of law. Porter v. Porter, supra; Kingsbery v. Kingsbery, 93 Ariz. 217, 379 P.2d 893 (1963).

■ Here, the appellee's position is that transmutation of the property had been effected by an oral agreement between her and the decedent. Other community property jurisdictions are not in accord with the aforesaid contention as to the efficacy of an oral agreement. The California courts recognize the validity of such agreements. In re Estate of Nelson, 224 Cal. App.2d 138, 36 Cal.Rptr. 352 (1964); In re Estate of Sears, 182 Cal.App.2d 525, 6 Cal. Rptr. 148 (1960); Woods v. Security First National Bank of Los Angeles, 46 Cal.2d 697, 299 P.2d 657 (1956).

Washington, on the other hand, holds that the character of separate property cannot be changed to community property by oral agreement. Leroux v. Knoll, 28 Wash. 2d 964, 184 P.2d 564 (1947). New Mexico follows the California view, but requires "clear and convincing" proof rather than the "mere preponderance" of the California courts. Chavez v. Chavez, 56 N.M. 393, 244 P.2d 781, 30 A.L.R.2d 1236 (1952).

The appellee-widow, in support of her claim of "transmutation," relies upon the California decisions which do not require a formal writing and consider as sufficient an executed oral agreement between the spouses. Inspection, however, of the myriad of decisions from California leads us to conclude that the factual situations are clearly distinguishable. For example, in the case of Kenney v. Kenney, 220 Cal. 134, 30 P.2d 398 (1934), one spouse testified that the parties had orally agreed, that all property owned by them or subsequently acquired was to belong to them equally or "fifty-fifty." In Stice v. Stice, 81 Cal.App.2d 792, 185 P.2d 402 (1947), the wife testified that the husband " 'always said that everything we had was community property—belonged to both of us' " and that " 'he said it hundreds of times.' "

In Durrell v. Bacon, 138 Cal.App. 396, 32 P.2d 644 (1934), the husband testified that

his wife, who had separate property, told him " 'what is mine is yours and what is yours is mine.' " In the case of In re Raphael's Estate, 91 Cal.App.2d 931, 206 P.2d 391 (1949), the wife testified that the husband told her on numerous occasions that they "were partners in everything, and everything was 'fifty-fifty.' "

In the case of In re Nelson's Estate, supra, the husband referred to the property as the mutual property of the parties, frequently expressed a desire to provide for his wife, the wife managed the property (a 30-unit apartment building), and joint state income tax returns were filed from 1949 to 1952 at a time when the state did not permit such joint returns unless the income reported was community property.

Here, the appellee relies on the fact that the rents and profits from the separate property of the decedent were co-mingled with the community earnings, that the parties had used the property as a family home for more than nineteen years, that community funds had been used for improvements and for taxes, and that the decedent, on two separate occasions told her, "I have taken care of you with 120 acres and the home—which includes the home."

▪ ■ We are of the opinion, and so hold, that this evidence is insufficient to prove an executed oral agreement that the property belongs to the community. The co-mingling of community and separate funds and use thereof for the decedent's separate property, did not change the status of the property from separate to community. Kingsbery v. Kingsbery, supra. Nor did the fact that the property had served as the family home for nineteen years, a fact equally consistent with the property being the separate property of the decedent, accomplish such change. The decedent's ref-

erences to having provided for his wife, (apparently referring to a previously prepared but unexecuted will), clearly negates any "transmutation" claim. Had the character of the property changed, as claimed by appellee, there would have been no need for the decedent to provide for her, by will or otherwise, since half of the 640 acres would already have been hers. We hold, therefore, that the trial court erred in finding that the property belonged to the community. Consequently, the court was only authorized to set it apart for a limited period. A.R.S. § 14–516, subsec. B.

■■ The appellant's final complaint is directed to the amount of property set apart. Our statutes prescribe no limitation of value on probate homesteads, so the court may set apart as much property as it deems just and proper in accordance with the living standards of the parties and the condition of the estate. In re Stanger's Estate, supra; 3 Bancroft's Probate Practice § 709 (2d ed. 1950). The $8,000.00 value limitation, applicable to homesteads selected during lifetime, does not apply to probate homesteads. In re Moore's Estate, 67 Ariz. 65, 190 P.2d 914. Appellant has not demonstrated an abuse of discretion on the part of the trial court in selecting the probate homestead, hence we will not interfere with its decision. In re Estate of Nelson, supra; In re Stanger's Estate, supra; In re Raymond's Estate, 137 Cal.App.2d 134, 289 P.2d 890 (1955).

Since the court erred in setting apart the probate homestead in fee to the appellee, the judgment is reversed with directions to designate a limited period therefor. In all other respects the judgment is affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.