[Civ. No. 7771. Second Appellate District, Division One.—July 9, 1931.]

In the Matter of the Estate of GERD EHLER, Deceased. OTTO EHLER et al., Appellants, v. CORA E. EHLER, Respondent.

L. J. Faust for Appellants.

Julius V. Patrosso for Respondent.

YORK, J.—This is an appeal by the executors from an order for family allowance, and from an order setting apart exempt personal property, and from an order setting apart a homestead, all in favor of the respondent, who is the widow of decedent. Said decedent died testate leaving an estate consisting entirely of separate property, which he devised to his children by a former marriage. By his will he specifically disinherited respondent, giving as his reason for such action the fact that she had left him and commenced an action for divorce against him. The inventory showed the value of the estate to be $346,000, against which amount there were liabilities in the form of mortgages and two disputed claims amounting to $75,000 and $3,700 respectively, making in all $171,000 of outstanding claims, but less than $100,000 of admitted indebtedness.

Appellants maintain that respondent is not entitled to a family allowance, to the exempt personal property or to the homestead out of her deceased husband's estate, for the reason that she was not a member of his family at the time of his death.

It is admitted that respondent commenced an action for divorce against deceased, which was pending at the time of his death, and that decedent had been paying to her the sum of $20 per week alimony *pendente lite*. In the *Estate of Parkinson,* 193 Cal. 354, at 358 [224 Pac. 453, 455], it was contended that the use of the word "family" in section 1466 of the Code of Civil Procedure gave rise to the implication that the allowances under that section were to be confined to cases where an actual family status existed at the date of the decedent's death, and the court in passing upon that question said: "We can see no reason for giving any such restricted significance to the use of that phrase in that section, nor, in fact, in making any distinction between the application of section 1464 and section 1466 of said code in that regard. Both of these sections are dealing with the support of the widow and minor children, if any, of the decedent, the one before and the other after the return of the inventory. In the case of an application made under section 1464 of the Code of Civil Procedure this court held, in the *Matter of Estate of Gould,* 181 Cal. 11 [183 Pac. 146], that the right of a widow to a reasonable provision for her support under section 1464 of the Code of Civil Procedure was not conditioned upon her having lived in a family relation with the deceased at the time of his death. In so holding, this court reviewed the earlier cases in this state involving this very question and wherein it was held in the absence of a showing that the wife had either by her conduct lost, or by her agreements waived, her statutory rights as a widow, she was entitled to a family allowance upon her husband's death, even though she was not living in the family relation with him at the time of his death. We can perceive no reason why this principle should not be given a like application to the provisions of section 1466 of the Code of Civil Procedure and to applications for family allowances made thereunder."

Appellants contend that the widow voluntarily abandoned decedent and that she thereby waived her right to claim any allowance from his estate. As a matter of fact, the record shows that she left him and instituted an action for divorce against him, which was pending at the date of his death. It was, therefore, never determined whether or not respondent left voluntarily or for good cause. In view of this, we are of the opinion that there was a total absence of any

showing that respondent by her conduct lost her statutory rights as the widow of decedent.

In the *Estate of Henningsen,* 199 Cal. 103 [247 Pac. 1082, 1083], (in which an appeal was taken from an order setting apart a homestead to the surviving husband of a deceased wife, and on appeal from an order setting apart the exempt property of said estate to the surviving spouse, and in which the appellant contended that the family relation had been dissolved prior to death and that therefore the husband was not entitled to benefit from the estate of the deceased wife), the court said: "Even if it were to be conceded, which it is not, that the appellant herein had established upon such hearing by practically undisputed evidence that the family status of the parties had been destroyed, it would not follow that the husband of the decedent must for that reason have been denied the rights he sought to assert under section 1465 of the Code of Civil Procedure. On the contrary, this court has held in *Estate of Gould,* 181 Cal. 11 [183 Pac. 146], and also in *Estate of Parkinson,* 193 Cal. 354 [224 Pac. 453], that the rights of the surviving spouse created under the provisions of sections 1464, 1465 and 1466 of the Code of Civil Procedure were not conditioned upon the existence of the family status at the date of the decedent's death."

 The court, in its order setting aside the exempt personal property for the use of the widow, included therein several pieces of furniture from the home place, which had been bequeathed by decedent to his heirs. The appellants claim that the court's action was inequitable and contrary to the law, inasmuch as the particular articles were unnecessary for the use of respondent and that she could very well have done without them. These pieces of furniture—admittedly exempt from execution—constituted a portion of decedent's home, and upon application of the widow, duly made and noticed, the requirement to set them aside to her is mandatory, and the court is without jurisdiction to make an order denying it. (*Mahoney* v. *National Surety Co.,* 89 Cal. App. 148, at 152 [264 Pac. 304], citing *Estate of Ballentine,* 45 Cal. 696; *County of Los Angeles* v. *State,* 64 Cal. App. 290, at 296 et seq. [222 Pac. 153].) This is also true of the proceeds from the insurance policy. The respondent had the prior right to have this money set aside

to her, despite the fact that the executors had used it to pay claims filed against the estate.

Appellants also claim that the court grossly abused its discretion in awarding respondent the sum of $6,500 for the month ending December 20, 1927 (which was more than eight months after letters testamentary had been granted), and also awarding the further sum of $750 per month from that date for the period of administration of the estate or until further order of the court; and in addition claim that these amounts are far in excess of the amounts reasonably necessary for respondent's maintenance according to her circumstances and manner of living, and are not justified by the amount and condition of the estate, which they maintain is insolvent. So far as the record shows, respondent received from the estate of her deceased husband the homestead, together with its furnishings and, $4,000 insurance money. There is nothing to show that she had independent means of her own with which to sustain herself. Further, the estate is a large one—over $200,000— and while much of the property is nonincome bearing, we do not find that the order awarding the widow $750 per month during the period of administration is excessive or an abuse of discretion by the trial court. The allowance of $6,500 ''for the month ending December 20, 1927'', probably was made by the court in the light of the fact that there had been a delay of seven months in the filing of the inventory, and a corresponding delay in the matter of family allowance. Neither do we believe that the allowance should be limited to one year after issuance of letters testamentary, unless the court should subsequently find the estate to be insolvent. In the ordinary estate offered for probate, there is rarely either sufficient cash on hand or income with which to pay off outstanding indebtedness, and an executor ordinarily is forced to sell off part of the estate in order to secure the funds necessary to pay claims and demands outstanding. In the instant case the assets of the estate were amply sufficient to pay all debts and all expenditures incident to administration. That is sufficient to make the estate not insolvent, within the definition of an insolvent estate under the provisions of section 1466 of the Code of Civil Procedure. Where the assets of an estate were appraised at $58,000, and the debts allowed,

exclusive of subsequently accrued interest, amounted to $31,000, but the property could not at that time be sold at the appraised value, it was held, nevertheless, that the estate was then solvent. (*Estate of Boyes*, 151 Cal. 143, 152 [90 Pac. 454].)

The orders are affirmed.

Conrey, P. J., and Houser, J., concurred.