MAY R. KIEFERDORF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109029. Promulgated March 16, 1943.

*Kenneth M. Johnson, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge:* The Commissioner, after having made a jeopardy assessment against petitioner, sent her a notice of a deficiency as a transferee of assets of the estate of her deceased husband, for his income tax in the amount of $557.31 for the calendar year 1939. The facts are found to be as stipulated.

Petitioner's husband, W. J. Kieferdorf (hereinafter referred to as decedent), a resident of San Francisco, died testate, December 3, 1939. He was survived by his widow and two minor children. The Bank of America National Trust & Savings Association was duly appointed and qualified as executor of his estate on January 3, 1940. On March 15, 1940, the executor filed an income tax return, reporting the income received by decedent during 1939. The tax shown to be due was $557.31 and the correctness of this amount is not in issue. No part of the tax was paid by the executor, though due notice and demand was served on it on or about June 1, 1940, and a second notice was served on it on or about July 31, 1940.

On January 25, 1940, petitioner filed a petition in the Superior Court, in accordance with the Probate Code of California, requesting that family allowance in the sum of $300 per month be granted for her minor children, who were wholly dependent on the estate, and for herself, she being "partially dependent thereon for support and maintenance." On February 8, 1940, the court entered an order directing that $250 per month be paid as a family allowance "during the progress of the settlement of the estate or until further order of the Court." The executor complied with the order thereunder, and on June 5, 1940, paid petitioner $1,500, being $250 per month from December 3, 1939, to June 3, 1940; and further paid $250 per month to August 3, 1940. Because of the exhaustion of the funds of the estate a final payment of the balance of the funds on hand in the amount of $90.73 was made on August 9, 1940. The aggregate of the payments made under the order was $2,090.73.

On April 5, 1940, petitioner filed another petition in the same court requesting that the property of the estate exempt from execution be set apart for the use and benefit of the family of the decedent. The court set apart for them and the executor paid to petitioner on June 6, 1940, $11,914.52 representing the proceeds of six policies of life insurance, the annual premiums on which had been less than $500 ($470.54) during decedent's life. After this amount was paid over to her there yet remained in the estate approximately $590, and liabilities of several thousand dollars.

The assets and receipts of the estate and the disbursements made by the executor were as follows:

| Assets and receipts | | Disbursements | |
|---|---|---|---|
| Cash | $106.79 | Cost of administration | $59.46 |
| Proceeds of Life Insurance | 11,914.52 | Funeral expenses | 629.05 |
| Stocks | 1,870.00 | Family allowance | 2,090.73 |
| Other personal property | 635.00 | Proceeds of insurance set aside as per | |
| Dividends | 54.00 | court order | 11,914.52 |
| Insurance refund | .20 | Loss on sale of stock | 50.00 |
| Profit on sale of automobile and stock above appraisal | 163.25 | Total | 14,743.76 |
| Total | 14,743.76 | | |

The executor filed a first and final report covering the period from appointment to September 3, 1940. The report showed income tax due because of income received by the decedent during his lifetime and that such sums had not been paid because of the exhaustion of the funds and assets of the estate by payment of costs of administration, a preferred claim, the setting aside of exempt property, and the payment of a family allowance. The exempt property referred to was the proceeds of the insurance. The report asked that any after-discovered property be distributed subject to charges for unpaid administration costs, income taxes, and other claims.

The executor was discharged and the administration of the estate was closed on or about October 9, 1940. All of the assets of the estate had been disposed of by September 3, 1940, leaving unpaid Federal and state income taxes, and other claims in the amount of $5,452.01; also executor's commissions and attorney's fees.

Is petitioner liable, as a transferee, for the income tax of her husband under the abovIe facts? Respondent insists that she is, relying upon the rationale of *Loe M. Randolph Peyton*, 44 B. T. A. 1246, and the cases cited therein. The cited cases applied the well established principal that a distributee of the estate of a deceased taxpayer is a transferee within the purview of—indeed within the precise provisions of—the transferee section. (Sec. 311, Internal Revenue Code.) Petitioner insists that respondent has failed to sustain his burden of proving that she received property or assets of her deceased husband's estate under such circumstances as to make her liable, "at law or in equity," for the tax.

The first court order in the administration proceeding, referred to above, was made under section 680 of the Probate Code of California, reading as follows:

The widow and minor children are entitled to such reasonable allowance out of the estate as shall be necessary for their maintenance according to their circumstances, during the progress of the settlement of the estate, which, in case of an insolvent estate, must not continue longer than one year after granting letters. Such allowance must be paid in preference to all other charges,

except funeral charges, expenses of the last illness and expenses of administration, and may, in the discretion of the court or judge granting it, take effect from the death of the decedent.

The insurance proceeds were set apart to petitioner under section 660 of the Probate Code of California, which is set forth in the margin,[1] which, as applicable here, authorizes the court in its discretion to set aside to a surviving spouse all or any part of the "property of the decedent exempt from execution." One type of property within this category (Sec. 690.19 Code of Civil Procedure) is "moneys [and] benefits accruing or  *  *  *  growing out of any life insurance, if the annual premiums paid do not exceed five hundred dollars *  *  *." In this case they did not exceed $500. The petitioner contends, in effect, that the transfer of the insurance proceeds did not render the estate insolvent, but that it became so only upon the completion thereafter of the payments to her as widow's allowance; and that both classes of payments were superior to the claim of the United States for the tax.

In *Jessie Smith, Executrix*, 24 B. T. A. 807, we held that the priority given Federal taxes by section 3466, Revised Statutes of the United States, does not confer priority over a widow's allowance allowed by a state probate court. We will therefore assume, without further discussion, that the transfer of funds as widow's allowance may not cause imposition of liability upon the petitioner in this matter. A transfer of the insurance proceeds is not, however, in our opinion, in the same category. In the case of the insurance proceeds, we find that the California statute fails to create any vested interest in the wife, as against the estate of the husband. Whether the Probate Court shall set apart the insurance proceeds to the wife is discretionary with that court. That this is true is emphasized by the fact that the same paragraph provides that the court must set aside the homestead (under certain circumstances). It thus appears that the insurance proceeds are not, as such, excluded from the estate of the decedent. Further, the power of the Probate Court to make the order is limited to property "exempt from execution," and it was because of the fact that such insurance proceeds, as those here involved, are under section 690.19 of the Civil Code of California declared "exempt from execution or attachment," that the order was made. It is plain, however,

---

[1] § 660. Possession before inventory : Setting aside homestead. The decedent's surviving spouse and minor children are entitled to remain in possession of the homestead, the wearing apparel of the family, the household furniture and other property of the decedent exempt from execution, until the inventory is filed. Thereupon, or at any subsequent time during the administration, the court, on petition therefor, may in its discretion set apart to the surviving spouse, or, in case of his or her death, to the minor child or children of the decedent, all or any part of the property of the decedent exempt from execution, and must set apart to such spouse or to such minor child or children the homestead selected, designated and recorded, if such homestead was selected from the community property, or from the separate property of the person selecting or joining in the selection of the same. [Enacted 1931.]

that the California law can not create exemptions from execution or attachment for the collection of Federal taxes. Section 3691 of the Internal Revenue Code provides the only exemptions in that respect, and that section does not cover insurance proceeds. It thus appears that the California statute necessarily goes only to exemptions under California law, and therefore that, though the property might be set aside to the widow as exempt under California law, the property so set aside was left subject to execution under the Federal law. To hold otherwise would be to disregard numerous cases, including *United States* v. *Howell*, 9 Fed. 674; *Staley* v. *Vaughn*, 50 S. W. (2d) 907; and *Shambaugh* v. *Scofield*, 132 Fed. (2d) 345, to the effect that state law can not prevail against Federal statutes on the question here at hand. In our opinion, therefore, the transfer of the insurance proceeds as being exempt from execution did not affect the power of the respondent to proceed against them to make the tax here involved.

*Proutt* v. *Commissioner*, 125 Fed. (2d) 591, points to no contrary conclusion. That case involved the question of inclusion of insurance in gross estate within the meaning of section 302 (g) of the Revenue Act of 1926, as amended; this involves the efficacy of Federal statutes providing for collection of income taxes, as against a state statute. The Tennessee statute there construed specifically provided that insurance effected by a husband on his life "shall inure to the benefit of his widow and children." Thus it appears that the insurance was, under the Tennessee law, not a part of the decedent's estate; whereas the California statute provides merely a possibility that the insurance may, within the discretion of the Probate Court, be transferred to the wife as property exempt from execution—and as above suggested, such transfer leaves the property subject to execution under Federal law. Though the petitioner argues that we have here no distraint, but only a question of transferee liability, it is apparent, we think, that the view is too limited, for if the property is subject to distraint, the inquiry opens as to whether the petitioner, by taking the property having interfered with distraint, is liable at law or in equity.

Is the petitioner, in receipt of the insurance converted into money, liable at law or in equity as transferee? The petitioner argues that there is no such liability because the transfer of insurance proceeds left sufficient assets in the estate to pay the tax, although she received such remaining assets as widow's allowance.

We think the petitioner's contention should not be sustained for two reasons: First, that the estate was rendered insolvent by the transfer of insurance proceeds, and, second, that equity would, in our opinion, be deaf to the petitioner's plea that insolvency was caused only by the subtraction of the widow's allowance from the estate. An ordinary definition of insolvency is, in effect, a preponderance of liabilities

over assets. In that sense the estate of petitioner's husband was rendered insolvent on June 6, 1940, when the insurance proceeds were transferred to her. We consider untenable the view that there was solvency on June 6, merely because some money remained in the estate after the transfer of the insurance proceeds. That money was subject to the debts of the estate and particularly subject to an order of the Probate Court entered on February 8, 1940, that $250 per month should be paid to the widow. The estate was exhausted on August 9, 1940. Under such circumstances we can no more view the estate as solvent on June 6, 1940, than we could view as solvent some individual whose liabilities exceeded his assets, merely because upon a certain date he had funds sufficient to pay a certain debt, but subject to his other liabilities.

The solvency of an estate must logically be viewed by comparison of all of its assets and liabilities as reflected in the final report and account. Additional claims might have existed against the estate here at hand, after the insurance proceeds were paid out. Indeed, the record shows that at the time of the filing of the executor's final account there were unpaid claims of $5,452.01, and income taxes due the State of California. We hold that the estate was rendered insolvent when it made the distribution of insurance proceeds to the petitioner on June 6.

In the second place, and without considering the other liabilities just mentioned, we have no doubt that in a court of equity petitioner would not be heard to say that the transfer to her of the insurance proceeds did not render the estate insolvent, when she herself was taking under a widow's allowance the remainder of the assets (except administration expenses and funeral expenses). It seems clear that equity would intervene, for if we assume the petitioner's right to the widow's allowance free from claims for income tax, it is obvious that the estate was, in effect, cut down to that extent, and that therefore the payment of the insurance money leaves the estate without assets with which to pay the income tax. Equity responds to the plea of inadequacy of legal remedy. 37 C. J. 340; *Redhead* v. *Payne*, 30 Cal. App. 685; 177 Pac. 298; *Gilchrist* v. *Helena Hot Springs & Smelter R. Co.*, 58 Fed. 708. On the petitioner's own theory, there was no legal remedy available to the tax collector as against the widow's allowance, and the transfer of the insurance proceeds left the estate impotent to pay the tax. Moreover, even if the estate had been solvent, the petitioner would still be liable as transferee under *Loe M. Randolph Peyton, supra.* We there held, in case of a solvent estate, that each distributee was liable as transferee, the Commissioner being able to proceed against one or all where altogether the transferees took the entire estate, leaving nothing for payment of the tax. Here the petitioner received the entire estate (except enough to pay

funeral expenses and administration costs, which are prior claims). After distribution to her, nothing was left for discharge of the tax. It is immaterial that we assume one element of the distribution, the widow's allowance, to be prior in right to Federal income tax. The other, as to insurance proceeds, we have above held to be otherwise. As in the *Peyton* case, it could not, being all of the residuum of the estate, be distributed, without the incidence of transferee liability upon the distributee.

It should be borne in mind that the petitioner here is no mortgagee, purchaser, or judgment creditor, for protection against whom the United States must file its lien with state or Federal recorders, but merely the recipient, without payment of consideration, of a portion of the estate of the decedent taxpayer, whose assets are subject to the payment of the tax. She received a part of those assets without authority other than the state statute above discussed, leaving the estate unable to pay the tax, she having also received the other assets under a claim here assumed prior to that of the United States. Primary principles of equity forbid that one convey his assets for no consideration, leaving a creditor powerless to collect his due. We hold that the petitioner, having received the results of conversion of the insurance, is liable in equity.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

MELLOTT, *J.*, dissenting: The humanitarian policy of the states toward the widow and children of a decedent is variously expressed. Thus (e. g.) in Tennessee there is a statute specifically providing that life insurance inures to the benefit of the widow and children and is not subject to the debts of the husband. This tribunal held, in *Estate of Frederick G. Proutt*, 41 B. T. A. 1299, that the proceeds of life insurance payable to the executor of decedent were includible in gross estate within the purview of section 302 (g) of the Revenue Act of 1926 as amended. The Circuit Court of Appeals for the Sixth Circuit reversed, pointing out that the executor acted "as a mere conduit to pass [the proceeds] to statutory beneficiaries free from claims against the estate." *Proutt* v. *Commissioner*, 125 Fed. (2d) 591. Cf. *Webster* v. *Commissioner*, 120 Fed. (2d) 514, involving proceeds of insurance under the laws of Florida. See also *In re Macneal's Estate*, 22 N. Y. S. (2d) 293, in which it is stated.

It has been the observation of the writer of this opinion, in his experience of many years, that the beneficent purpose of the statute has been repeatedly demonstrated, particularly when the decedent was survived by a wife and minor children. The prompt payment of the pecuniary exemption and the allocation of the exempt articles to the widow has tided over many families in the period of distress after the passing of its chief support. * * * The pecuniary

amount and the articles themselves are set aside as property untouchable by the creditors of the decedent or by the executor or by the administrator of the estate. * * * Paraphrasing Chief Judge Cardozo's statement in *Surace* v. *Danna*, 248 N. Y. 18, 21, 161 N. E. 315: Provision for the comfort and needs of the family, not payment of their "ancient debts, is the theme of the statute, and its animating motive."

Similar statutes and rules of law exist in most of the states. In the state of the domicile of petitioner and her husband the statute cited by the majority in the footnote provides that the court "may" set apart to the surviving spouse or to the minor child or children of the decedent "all or any part of the property of the decedent exempt from execution." The majority hold that in the case of insurance proceeds the California statute fails to create any vested interest in the wife as against the estate of the husband, pointing out that whether the court shall set them apart to the wife is discretionary with it. While that seems to be the language of the statute, its construction by the California courts has consistently been as indicated in the following quotation from *Mahoney* v. *National Surety Co.*, 264 Pac. 304, 305:

The requirement upon the court to set aside exempt property upon application of the widow, duly made and noticed, is mandatory, and the court is without jurisdiction to make an order denying it. *Estate of Ballentine*, 45 Cal. 696; *County of Los Angeles* v. *State*, 64 Cal. App. p. 296 et seq., 222 Pac. 153.

See also *Estate of Ehler*, 115 Cal. App. 403; 1 Pac. (2d) 546; *Holmes* v. *Marshall*, 145 Cal. 777; 79 Pac. 534; *Estate of Pillsbury*, 175 Cal. 454; 166 Pac. 11.

The right of the widow to the exempt property of her husband is superior to the claims of creditors. *In re Still*, 117 Cal. 509; 49 Pac. 463; *Estate of Levy*, 141 Cal. 646; 75 Pac. 301.

I agree with the conclusion of the majority that the California law can not create exemptions from execution or attachment for the collection of Federal taxes. Whether it may do so is not an issue in this proceeding and the discussion of section 3691 of the Internal Revenue Code is not apposite. The reference in the probate code to the property which is to be set apart to the widow and minor children is merely a convenient method of describing or enumerating the property to be so dealt with. For the purpose of this case the statute is in essense the same as the Tennessee, Florida and New York statutes to which reference has been made. In other words, the statute, as construed by the California courts, requires the Probate Court to set apart to the widow and minor children of a decedent the proceeds of any life insurance on the husband's life where the annual premiums were not in excess of $500 per annum, and the amount received by the executor is not subject to the payment of decedent's debts.

Reference is made in the opinion of the majority to *Jessie Smith, Executrix*, 24 B. T. A. 807, in which it was held that the priority given Federal taxes by section 3466 of the Revised Statutes of the United

States did not confer priority over a widow's allowance, set apart to her by a state Probate Court. It was there pointed out that, since the statutory allowance is not a debt and since the payment thereof is not the payment of a debt, the Government's claim for priority could not be allowed. The rationale of the cited case is equally applicable to the insurance money.

The reliance of the majority upon *Loe M. Randolph Peyton*, 44 B. T. A. 1246, does not seem to be sound. Of course if a solvent estate is distributed to a decedent's heirs or legatees they are liable as transferees. If the insurance money belonged to decedent's widow and children—and under the laws of California as construed by its courts I think that it did—then the executor acted as a mere conduit to pass it on to them and the amount was never "distributed" to them in the sense that the word is used in the cited case and in the probate code. Cf. *Hart* v. *Taber*, 161 Cal. 20; 118 Pac. 252; *Saddlemire* v. *Stockton Savings & Loan Soc.*, 144 Cal. 650; 79 Pac. 381; *Williams* v. *Williams*, 170 Cal. 625; 151 Pac. 10. Moreover it is open to question if the estate was ever solvent, even under the definition adopted by the majority. Apparently it was not unless the insurance was a part of decedent's gross estate; for the proved debts and claims (including the family allowance) exceeded the assets if the insurance money is excluded.

Section 3691 of the Internal Revenue Code, mentioned in the opinion of the majority, is relied upon by neither party. It exempts from distraint and sale, if belonging to the head of the family, certain enumerated property. Petitioner is not claiming that the insurance money is exempt to her or that it could not be subjected to distraint in the event she should neglect or refuse to pay any taxes for which she is liable. (See sec. 3690, Internal Revenue Code.) The issue is the much narrower one: Is she liable, at law or in equity, as a transferee because the insurance money was set apart to her?

In *Tooley* v. *Commissioner*, 121 Fed. (2d) 350, 356, the Circuit Court of Appeals for the Ninth Circuit discussed at length the powers and duties of an executor and the powers of Superior Courts of California, acting in probate, especially as they impinged upon the question there in issue—whether a surviving co-tenant in a joint tenancy is a transferee within the provisions of section 311 of the Internal Revenue Code. The court said:

Section 311 does not impose a tax on a transfer from the taxpayer to the transferee of taxpayer's property or any tax at all on the transferee. It merely provides a "new remedy for enforcing the existing 'liability, at law or in equity' " for collecting the tax due from the transferor. *Phillips* v. *Commissioner*, 283 U. S. 589–594, 51 S. Ct. 608, 610, 75 L. Ed. 1289; *Phillips-Jones Corp.* v. *Parmley*, 302 U. S. 233, 235, 58 S. Ct. 197, 82 L. Ed. 221. As was stated in the Conference Report on the bill for the Act of 1926, originally creating the remedy, "for

procedural purposes the transferee is treated as a taxpayer would be treated." *Id.*, *Phillips* v. *Commissioner*, 283 U. S. footnote, page 594, 51 S. Ct. page 610, 75 L. Ed. 1289.

Legal or equitable liability as a transferee is generally to be determined by reference to state and Federal statutes and by applying established common law principles. *A. H. Graves*, 12 B. T. A. 124; *Harwood* v. *Eaton*, 68 Fed. (2d) 12. Respondent, although he has the burden of proof, points to no state statute indicating that the setting apart to petitioner of the insurance money or the payment of the family allowance was in fraud of creditors and none has been found. Indeed, it is reasonable to assume that the court would not have approved the "First and Final Account" of the executor if any unlawful preference had been made; for it shows upon its face that certain sums were due to the State of California and to the United States as income taxes because of income received by the decedent during his lifetime and that the taxes had "not been paid because of the exhaustion of the funds and assets of said estate." Apparently the majority find only that petitioner is liable "in equity" for the tax of her husband. This seems to be predicated upon the theory that a conveyance of the estate property was made to her "without payment of consideration," that she "received the results of conversion of the insurance," and that the estate was left "without assets with which to pay the income tax." The first two assumptions are unproved, if not contrary to the stipulated facts, and the last, standing alone, is not sufficient to make her liable as a transferee.

Since I am of the opinion the Commissioner has failed to sustain his burden of proof, I respectfully note my dissent.

VAN FOSSAN, *J.*, agrees with this dissent.