IN THE MATTER OF THE ESTATE OF JACOB KATLEMAN, ALSO KNOWN AS JAKE KATLEMAN, DECEASED; LIBERTY KATLEMAN, ONE OF THE HEIRS OF THE ESTATE, AND JENNIFER LYNN KATLEMAN, MINOR HEIR OF THE ABOVE-ENTITLED ESTATE, BY AND THROUGH WILLIAM G. RUYMANN, HER ATTORNEY, APPOINTED BY THE ABOVE-ENTITLED COURT, APPELLANTS, v. BELDON R. KATLEMAN, PURPORTED PURCHASER OF PERSONAL PROPERTY, AND FIRST NATIONAL BANK OF NEVADA, COADMINISTRATOR, RESPONDENTS.

Nos. 3731 and 3732

December 15, 1953.                    264 P.2d 843.

See also 70 Nev. ......, 269 P.2d, 257.

*Taylor & Gubler,* of Las Vegas, for Appellant Liberty Katleman.

*William G. Ruymann,* of Las Vegas, for Appellant Jennifer Lynn Katleman, a minor.

*A. W. Ham & A. W. Ham, Jr.,* of Las Vegas, *Woodburn, Forman & Woodburn,* of Reno, and *Leo K. Gold,* of Beverly Hills, California, for Respondent Beldon R. Katleman.

*Jones, Wiener & Jones,* of Las Vegas, for Respondent First National Bank of Nevada.

## OPINION

ON MOTION TO DISMISS APPEAL

By the Court, BADT, J.:

Respondents move to dismiss the appeal of appellants from an order confirming a sale of personal property and from an order denying a new trial of said issue.

The motion is predicated upon the contention that appellants accepted the benefits of the orders appealed from and thereby waived their rights of appeal and are precluded from prosecuting their appeal.

Liberty Katleman, surviving widow of Jacob Katleman, deceased, and the First National Bank of Nevada were appointed coadministrators of the estate of Jacob Katleman, deceased, on July 6, 1950. The assets of the estate included 495 shares of the capital stock of Elranco Inc. listed in the third account as of the value of $96,368.88, and a promissory note in the sum of $81,-631.12 from Elranco Inc. payable to deceased. A sale of said stock in October, 1951, for $96,368.86 was set aside by the court on account of irregularities, and the said purchase price, together with interest, was on order of court repaid to the purchasers. This caused an overdraft in the administrators' bank account in the amount of $37,276.37. A second public sale was held in June, 1952, by the First National Bank of Nevada, one of the coadministrators, which produced the sum of $184,500 for the said stock and the said promissory note. Liberty Katleman objected to confirmation. On July 14, 1952 the sale was confirmed and on September 10, 1952 an amended order of confirmation was filed. Thereafter Liberty Katleman, as a surviving heir, and Jennifer Lynn Katleman, a minor heir, through her attorney, moved for a new trial and for an order setting aside the confirmation. From the amended order of confirmation and the adverse orders on the subsequent motions this appeal was taken by Liberty Katleman and Jennifer Lynn Katleman.

Respondents have attached as exhibits to their motion to dismiss sundry proceedings of the probate court. From these it appears that the coadministrators on January 14, 1953 filed a petition for a family allowance in the sum of $750 per month for the support of the surviving widow and minor heir. On February 3, 1953 the petition was granted as prayed and the January and February allowances were paid aggregating $1,500.

There were also paid by the administrators to one Mary Katleman, divorced wife of decedent, an aggregate of $4,500 under the terms of a separation agreement that had been entered into which provided for $500 monthly payments until the death or remarriage of the said Mary Katleman. It appears further that without resorting to the proceeds of the sale of the corporate stock and note the estate would not have possessed sufficient funds to make these payments. It is further pointed out by respondents that in the event of a reversal of the order confirming sale and a consequent order setting such sale aside, the stock and note would have to be returned to the administrators by the purchaser and the proceeds of the sale refunded to the purchaser by the administrators.

Respondents then assert that in order thus to place the parties to the sale in the position occupied by them, respectively, prior to confirmation, appellants would have to return the moneys received as a family allowance and would also have to recover and return the moneys paid to the former wife of decedent. No authorities are cited to support this assertion. It is based entirely upon the contention that the moneys received as family allowance and the moneys paid on the obligation to decedent's former wife were all made out of the proceeds of the sale, which appellants seek to set aside by this appeal. In other words, respondents insist that the situation above described brings appellants within the rule that, having received and enjoyed the fruits of the orders, they are estopped from attempting to destroy these same orders.

The application of the rule is not new to this court. In Afriat v. Afriat, 61 Nev. 321, 117 P.2d 83, 85, this court reaffirmed the rule enunciated in State v. Central Pacific Railroad Co., 21 Nev. 172, 26 P. 225 (rehearing denied 21 Nev. 178, 26 P. 1109) and affirmed in Cunningham v. Cunningham, 60 Nev. 191, 102 P.2d 94, 105 P.2d 398, as follows:

"Where a reversal upon the plaintiff's appeal would require him to refund to the defendant money or property which he has obtained under the judgment, there is reason for holding that the acceptance of the benefits of the judgment is a waiver of the right to appeal. Having elected to receive the fruits of the judgment, he is estopped from attempting to destroy the very foundation of his right to receive them. But where a reversal would not work this result, where his right to what he has received would still remain intact, it is difficult to conceive why he should not be allowed to take what is now, and always will be, his, and still prosecute his claim for more."

The court in the Afriat case then added: .

"It seems apparent that a reversal of the judgment in this case would not require the appellant to refund the money received for additional attorneys' fees and for maintenance during the pendency of the action, and hence such acceptance is not a waiver of her right to appeal."

The application of this rule returns us to respondents' contention that a setting aside of the sale, with its consequent return of the purchase price to the purchaser, would in turn require the repayment of the family allowance to the administrators and likewise the recovery and repayment to the administrators of the sums paid to the former wife. Respondents seek to support such position because of the lack of cash in the hands of the administrators and because of the bank overdraft of $37,276.37 resulting from the setting aside of the first sale of the Elranco stock. They assert that the estate was insolvent.

The record however does not indicate such insolvency. The third account of the administrators shows assets which had come into their hands valued at $325,244.96, from which disbursements had been made to the extent of $147,813.39, leaving a net estate of $177,431.57, in addition to further incoming assets aggregating several thousand dollars more. It is nowhere suggested that the

cost of administration, payment of creditors' claims, judgments, family allowance or any other necessary disbursements will even approach an exhaustion of the net estate. Indeed, with time for presentation of creditors' claims long since expired, it appears from the third account all creditors' claims have been paid with the exception of items aggregating some $14,000 for the benefit of Mary Katleman and a further contingent claim of $13,845.26, besides the continuing liability of the estate for the $500 monthly payments to Mary Katleman and besides a possible liability for further estate taxes in the sum of $6,128.63 claimed to be due the United States but disputed by the administrators. To this of course must be added the fees of the administrators and their attorneys.

Where the assets are amply sufficient to pay all debts and expenditures incident to administration, the estate is solvent within the provisions of our sections having to do with family allowance. In re Ehler's Estate, 115 Cal.App. 403, 1 P.2d 546, 548. As was said in that case: "In the ordinary estate offered for probate, there is rarely either sufficient cash on hand or income with which to pay off outstanding indebtedness, and an executor ordinarily is forced to sell off part of the estate in order to secure the funds necessary to pay claims and demands outstanding." Indeed such a situation appears to be contemplated by our statutes. Section 9882.223, N.C.L.1931–1941 Supp., fixes the order in which the debts of the estate shall be paid: funeral expenses, expenses of the last illness, family allowance, debts having preference by laws of the United States, certain wage claims, judgments and mortgages, and lastly all other demands. Section 9882.226 id. has particular application. It requires the executor or administrator to pay the funeral expenses, the expenses of the last illness and the allowance made to the family of the deceased *as soon as he has sufficient funds in his hands.*

If the condition of the estate was such as to authorize the family allowance made, the court was not deprived, and would not have been deprived, of the power to make such allowance by reason of the fact that the administrators did not have in their hands sufficient money to pay the same. In re Carriger's Estate, 108 Cal. xv (not reported), 41 P. 700. The validity of the court's order of family allowance was not more strongly supported by the administrators' possession of the proceeds of the sale than it would have been by the administrators' possession of the stock prior to the sale. By the same token neither the validity of the order of family allowance nor the legal effect of the payment of such family allowance by the administrators or of the acceptance thereof by the widow will be affected by either the affirmance or reversal of the order confirming sale. If the order is affirmed there remains no problem as to that incident of the administration. If the order is reversed and the parties to the sale must be restored to their former status, the problem as to how this will be accomplished is one for the administrators and the probate court. The conclusion inevitably follows that the widow's acceptance of the family allowance payments was an acceptance thereof out of the proceeds of properties of the whole estate. Assuming her complete knowledge of the fact that the particular moneys received by her as family allowance were part of the proceeds of the sale of the Elranco stock, her acceptance thereof cannot logically be said to be such an acceptance of the fruits or benefits of the order confirming sale as to preclude her appeal from that order.

The minor heir, appearing through her counsel, contends that in any event she cannot be bound, nor can she be precluded from appealing by reason of acceptance of family allowance by her mother and legal guardian. In view of the foregoing, however, it becomes unnecessary to pass on this phase of the motion.

We have given consideration to the authorities cited

by respondents but they do not affect our conclusions as above recited.

The motion to dismiss the appeal is denied.

EATHER, C. J., and MERRILL, J., concur.