STEWART C. HOLMES, TRANSFEREE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5098-63.    Filed March 23, 1967.

*Walter L. Mims,* for the petitioner.
*Robert W. Goodman,* for the respondent.

MULRONEY, *Judge:* Respondent determined that petitioner is liable to the extent of $37,559.93, plus interest, as transferee of assets of the Daro Corp. for income tax deficiencies and interest due from the Daro Corp. for the fiscal years ended March 31, 1956 and 1957. The issue is whether petitioner is liable, to the extent determined, as transferee for the taxes and interest due from the transferor corporation.

#### FINDINGS OF FACT

Some of the facts were stipulated and they are so found.

Stewart C. Holmes is a resident of Birmingham, Ala. The Daro Corp. was organized under the laws of Louisiana on July 14, 1954.

The corporation filed its income tax returns for the taxable years ending March 31, 1956 through 1960, with the district director of internal revenue, New Orleans, La. During the corporation's taxable years ended March 31, 1956 and 1957, its 100 shares of outstanding stock (par value $10 per share) were owned as follows:

| Stockholder | Shares |
|---|---|
| F. R. Daugette | 30 |
| M. H. Caraway | 25 |
| Stewart C. Holmes | 25 |
| Frank Bainbridge | 10 |
| Claiborne Perrilliat | 10 |

On June 25, 1954, F. R. Daugette obtained an option from St. Martin's Episcopal Church to purchase 132 residential building lots in unit No. 3 of Green Acres Subdivision, plus other residential lots and realty in Jefferson Parish, La. Daugette subsequently transferred undivided interests in the option to Holmes (25 percent), Caraway (25 percent), and Bainbridge (10 percent). In addition, Claiborne Perrilliat received a 10-percent interest in that portion of the option to purchase the 132 residential building lots. On October 11, 1954, the option, to the extent of purchasing the 132 building lots, was transferred to the Daro Corp., which agreed to pay $865 per lot for the right to exercise the option on said 132 building lots.

Daro Corp. made the following payments on the option:

| Payee | Option payment | Interest | Date paid |
|---|---|---|---|
| Daugette | $34,254 | $1,217.92 | Dec. 27, 1955 |
| Caraway | 28,545 | 1,014.93 | Dec. 27, 1955 |
| Holmes | 28,545 | 1,014.93 | Jan. 2, 1956 |
| Bainbridge | 11,418 | 405.98 | Jan. 2, 1956 |
| Perrilliat | 11,418 | 405.97 | Jan. 2, 1956 |

On or about October 11, 1954, the Daro Corp. exercised the option to purchase the 132 lots from St. Martin's Episcopal Church at a price of $2,845 per lot. The corporation included in its cost of land on its return for the fiscal year ending March 31, 1956, the payment to its stockholders for the option amounting to $865 per lot, or a total of $3,710 per lot.

Subsequent to October 11, 1954, Daugette, acting as trustee for himself, Caraway, Holmes, and Bainbridge, entered into an agreement with the Daro Corp. whereby the corporation obtained the right to exercise the option to purchase 107 lots of unit No. 4 of the Green Acres Subdivision. The Daro Corp. exercised the option to purchase the 107 lots from St. Martin's Episcopal Church at a price of $2,735 per lot.

The Daro Corp. made the following payments for the option to purchase the lots in unit No. 4, Green Acres Subdivision:

| Stockholder | Date of payment | Amount | Total |
|---|---|---|---|
| Daugette | March 1957<br>Sept. 14, 1957<br>Jan. 26, 1958 | $2,000<br>10,000<br>2,800 | |
| | | | $14,800 |
| Caraway | Sept. 14, 1957<br>Jan. 26, 1958 | 6,250<br>1,750 | |
| | | | 8,000 |
| Holmes | Sept. 14, 1957<br>Jan. 26, 1958 | 6,250<br>1,750 | |
| | | | 8,000 |
| Bainbridge | Sept. 14, 1957<br>Jan. 26, 1958 | 2,500<br>700 | |
| | | | 3,200 |
| | | | 34,000 |

In *Daro Corp.*, T.C. Memo. 1961–309, involving the corporation's taxable year ended March 31, 1956, this Court held that the transfer of the option right to the corporation by its controlling stockholders was not a bona fide sale but was in the nature of a capital contribution and that, consequently, the corporation overstated its cost of land for the taxable year ended March 31, 1956, by including therein the amount of $114,180 paid to its stockholders for the purported purchase of an option right to buy 132 residential lots.

On April 20, 1962, additional income taxes for the taxable year ended March 31, 1956, and accrued interest, were assessed against the Daro Corp. in the total amount of $73,685.97. The income tax deficiency for the taxable year ended March 31, 1956, assessed on April 20, 1962, was $62,067.12. On December 14, 1962, additional taxes for the taxable year ended March 31, 1957, and accrued interest, were assessed against the Daro Corp. in the total amount of $10,452.12.

The balance sheet shown on the return of the Daro Corp. as of March 31, 1956, showed the following assets and liabilities:

ASSETS

| | |
|---|---|
| Cash on hand and in bank | $14,586.06 |
| Notes receivable | 5,163.18 |
| Deposits | 30.00 |
| Land | 1,069.75 |
| House (Minden, La.) | 9,085.08 |
| Furniture & fixtures and automobile (less depreciation) | 1,831.56 |
| Organization expense | 921.50 |
| | 32,687.13 |

LIABILITIES

| | |
|---|---|
| Accounts payable | $3,680.09 |
| Notes payable—Blaylock Investment Co. | 7,478.69 |
| Accrued salaries | 3,050.00 |
| Accrued interest | 52.88 |
| Accrued taxes | 4.88 |
| Federal and state income taxes payable | 5,486.75 |
| Capital stock | 1,000.00 |
| Surplus | 11,933.84 |
| | 32,687.13 |

The balance sheet shown on the return of Daro Corp. as of March 31, 1958, showed a surplus deficit in the amount of $72,697.38.

When the assessments of tax deficiencies against the Daro Corp. for the taxable years ended March 31, 1956 and 1957, were made on April 20, 1962, and December 14, 1962, respectively, the corporation was inactive. The corporation's income tax return for the taxable year ended March 31, 1961, shows interest earned in the amount of $90.61 and an insurance refund of $26.21, or total income for the taxable year in the amount of $116.82, with expenses of $1,594.07.

The deficiencies in income taxes due from the Daro Corp. for the taxable years ended March 31, 1956 and 1957, have not been paid by the corporation.

On November 22, 1963, the Estate of F. R. Daugette, deceased, the Estate of M. H. Caraway, deceased, Claiborne Perrilliat, and Frank Bainbridge were assessed liabilities in various amounts as transferees of the Daro Corp. The assessment of liabilities and the payments made are as follows:

| | Amount assessed | Amount paid |
|---|---|---|
| Estate of F. R. Daugette | $50,271.92 | $35,020.68 (Feb. 6, 1964) |
| | | 50.78 (Mar. 3, 1964) |
| Estate of M. H. Caraway | 37,559.93 | 29,185.32 (Feb. 6, 1964) |
| | | 42.32 (Feb. 17, 1964) |
| Claiborne Perrilliat | 11,823.97 | 9,186.86 (Feb. 6, 1964) |
| | | 13.32 (Feb. 17, 1964) |
| Frank Bainbridge | 15,023.98 | 11,670.72 (Feb. 6, 1964) |
| | | 16.19 (Feb. 28, 1964) |

The above payments equal the total amount of additional income taxes and accrued interest assessed against the Daro Corp. for the taxable years ended March 31, 1956 and 1957. None of the payments were treated as escrow fund or placed in a suspense account by the district director of internal revenue.

During 1965, Frank Bainbridge, Claiborne Perrilliat, and the Estate of M. H. Caraway filed administrative claims for refund of the liabilities paid by them.[1]

### OPINION

The only issue is whether petitioner is liable as a transferee under section 6901, I.R.C. 1954,[2] for the unpaid income taxes, plus interest, of the Daro Corporation for the taxable years ended March 31, 1956 and 1957, to the extent of the corporate distributions ($37,559.93) made to him in those taxable years, plus interest. Section 6902(a) I.R.C. 1954, provides that "In proceedings before the Tax Court the burden of proof shall be upon the Secretary or his delegate to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax." It has been stipulated that the total income tax liability, plus interest, of the Daro Corp. is in the total amount of $84,138.09.

To meet his burden of proof, respondent must show that there was a transfer of assets without adequate consideration from the transferor to the transferee and that the transferor was insolvent at the time of, or was rendered insolvent by, that transfer. *Arlington F. Brown*, 24 T.C. 256 (1955). In determining whether the transferor was insolvent, its liability for Federal income taxes, plus interest, even if unknown at the time of the transfer, must be taken into account. *J. Warren Leach*, 21 T.C. 70 (1953). Since the liability of a transferee is a secondary liability, respondent must show that he was unable to collect the taxes and interest from the transferor. *Anne Gatto*, 20 T.C. 830 (1953).

Petitioner does not argue on brief that respondent failed in his burden to show that he was unable to collect Daro's taxes and interest from the transferor or that the transfers of assets to petitioner were transfers without adequate consideration. However, as will presently appear, we have undertaken to show respondent amply sustained his burden in both respects.

Petitioner's main argument here is that the payments by the four other transferees (Estate of F. R. Daugette, Estate of M. H. Caraway,

---

[1] Respondent states on brief that after the trial of this case on Sept. 26, 1966, Frank Bainbridge filed suit for refund of $11,686.91, plus interest, on Nov. 22, 1966, in the U.S. District Court for the Northern District of Alabama, Southern Division, and the widow of M. H. Caraway filed suit for refund of $29,227.64, plus interest, on Nov. 18, 1966, in the U.S. District Court for the Eastern District of Louisiana, New Orleans Division.

[2] SEC. 6901. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

(1) INCOME, ESTATE, AND GIFT TAXES.—

(A) TRANSFEREES.—The liability, at law or in equity, of a transferee of property—

(i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes),

Claiborne Perrilliat, and Frank Bainbridge) toward their respective liabilities as transferees of assets of the Daro Corp. exceed the total tax and interest owed by the transferor corporation ($84,138.09) and that this extinguishes petitioner's liability as transferee. Respondent does not quarrel with the general principle that the tax liability of the transferor can be collected only once and that in transferee cases where it is shown that the full amount of the deficiency of the transferor has been paid, the liability of the transferee is extinguished. See *Estate of Samuel Stein*, 40 T.C. 275, 278 (1963); *J. P. Quirk*, 15 T.C. 709 (1950), affd. 196 F. 2d 1022 (C.A. 5, 1952). But respondent contends that this principle does not apply where, as here, some of the transferees have made payments on their transferee liabilities and have then filed claims for refund of such payments.[3]

We believe that the cases support respondent's position. In *Ernest DuPont*, 34 B.T.A. 1059 (1936), affirmed sub nom. *Peir* v. *Commissioner*, 96 F. 2d 642 (C.A. 9, 1938), the respondent determined that the taxpayers and the Air Reduction Co. were liable as transferees for the tax deficiency of the Western Oxygen Co. The taxpayers filed a petition with this court (then the U.S. Board of Tax Appeals). Prior to the hearing, the Air Reduction Co. made a payment under protest of the amount of the tax deficiency, plus interest, and accompanied the payment with a claim for refund based on the contention that the Air Reduction Co. was a purchaser for value of the assets and business of the Western Oxygen Co. and therefore was not liable as a transferee of that company. The taxpayers in *Ernest DuPont*, *supra*, argued that the payment made by Air Reduction Co. extinguished the tax in controversy and that it discharged the transferee liability of the taxpayers. We rejected this argument, stating as follows at page 1060:

The payment by the Air Reduction Co. was expressly made under protest and accompanied by a claim for refund on the ground that that corporation was not liable for the amount paid or any amount as transferee of the Oxygen Co.'s assets, since it was a purchaser for value. Clearly this was not a *final* discharge of the Oxygen Co.'s liability for the deficiency, and until it became so, either actually or presumptively, and the Reduction Co.'s right to recover determined, the Government's right to a proper collection of the deficiency was not foreclosed. The Commissioner's collection of a transferor's liability provisionally paid by a stranger or one who is otherwise not liable therefor does not discharge the liability or preclude its determination against the proper transferee. It is only a collection which discharges the obligation that can not be made twice. Until it appears from the evidence before the Board that there has been a *complete* discharge of the transferor's deficiency, the liability of the other alleged transferees must, upon their petition to the Board, be determined. [Emphasis added.]

---

[3] Respondent states on brief that "If this Court should determine that the petitioner is liable as a transferee to the extent of the payments the taxpayer made to him, he will still not have to pay the respondent a cent as a result thereof if the four paying transferee-stockholders are unsuccessful in their claims for refund."

The Court of Appeals for the Ninth Circuit, in affirming, agreed that the payment of the tax by Air Reduction Co. was "a conditional one and does not act as a discharge until the conditions are resolved against the taxpayer." The appellate court also observed that, until such payment was "final and unconditional," the tax remained unpaid insofar as the liability of the other transferees was concerned.[4]

A different situation arose in *J. P. Quirk, supra*. In that case, after a deficiency notice had been mailed to the transferor corporation determining a tax deficiency for 1942 (and other years not here relevant), the tax deficiency for 1942 was paid on behalf of the transferor corporation, and, subsequently, a claim for refund of the amount paid for 1942 was filed on behalf of the transferor corporation. Notices of transferee liability for the tax liabilities of the transferor corporation for several years including 1942 were also mailed to the transferees who contested their liabilities as transferees before this Court. We held that, since the tax deficiencies for 1942 had been paid in the name of the taxpayer corporation, there was "no impediment to treating these as final payments of the deficiencies in question, thereby eliminating any liability of these petitioners [i.e., the transferees] for that item." In other words, a payment of the disputed tax deficiency by the *primary taxpayer* eliminated any transferee liability for that amount, notwithstanding the fact that the primary taxpayer had filed a claim for refund.

In *J. P. Quirk, supra*, we distinguished the earlier holding in *Ernest DuPont, supra*, as "not applicable, the deficiency there having been paid by another alleged transferee." It is quite obvious that a different situation exists where a primary taxpayer, rather than an alleged transferee, files a claim for refund after making payment. If the primary taxpayer obtains a refund by showing that he was not properly subject to the tax, there is no conceivable reason why a transferee should bear the burden of it. But a transferee may obtain a refund of his payment of his transferee liability by using defenses not available to other transferees, i.e., that he was a purchaser for value of the transferor's assets or that the assessment of transferee liability against him was not timely. Such an adjudication still leaves

---

[4] The crucial fact in the above case, emphasized by both the U.S. Board of Tax Appeals and the appellate court, was the existence of the claim for refund, not the fact that the payment by Air Reduction Co. was made "under protest." Nor did anything turn on the fact that the payment was placed in a suspense account or held in escrow.

We might add that sec. 1014 of the Revenue Act of 1924 abolished the ritualistic requirement that no suit for refund could be maintained unless the disputed payment had been explicitly made under protest. (See *George Moore Ice Cream Co. v. Rose*, 289 U.S. 373 (1933). In the *Ernest DuPont* case, the payment, as well as the claim for refund by Air Reduction Co., were both made in 1932. Therefore, petitioner's attempt to distinguish the *Ernest DuPont* case because the payment by Air Reduction Co. was made "under protest" is somewhat baffling.

the primary tax obligation unpaid and it can have no effect on the transferee liability of other transferees.

It fairly appears that the distributions made by the Daro Corp. to petitioner cannot be categorized as consideration received from the sale of the option to purchase certain realty to the corporation. This very issue was litigated in *Daro Corp., supra,* where this Court held that the transfer of the option to the Daro Corp. was not a bona fide sale.

Petitioner argues respondent failed in his burden to show the transferor was insolvent or rendered insolvent by the transfers to petitioner. We think the record amply shows that the Daro Corp. was insolvent at the time of, or was rendered insolvent by, the distributions made in the taxable years ended March 31, 1956 and 1958. Insolvency as used here means an excess of liabilities over assets, *May R. Kieferdorf,* 1 T.C. 772 (1943), affd. 142 F. 2d 723 (C.A. 9, 1944), and as indicated earlier, the transferor corporation's liability for Federal income taxes, plus interest, even if unknown at the time of the transfer, must be taken into account in determining whether the transferor was insolvent. *J. Warren Leach, supra.* It is undisputed that the tax liability, plus interest, of the Daro Corp. was $73,685.97 for the taxable year ended March 31, 1956, and $10,452.12 for the taxable year ended March 31, 1957. The corporation's balance sheet as of March 31, 1956, shows total assets of $32,687.13 and total liabilities of $19,753.29, with capital stock and surplus totaling $12,933.84. Taking into consideration the Federal tax deficiency as of that date ($62,067.12, less an abatement of $6,917.42), it is obvious that the corporation was insolvent. As to the taxable year ended March 31, 1958, the corporation's balance sheet shows a deficit of $72,697.38 as of that date, clearly demonstrating insolvency even without taking into account the existing Federal tax deficiencies as of that date.

We are satisfied that respondent made every reasonable effort to collect the taxes due from the transferor. After the Court's decision in *Daro Corp., supra,* became final the tax deficiency of the corporation for the taxable year ended March 31, 1956, was assessed on April 20, 1962. The corporation's tax deficiency for the taxable year ended March 31, 1957 was assessed on December 14, 1962. When these assessments were made the Daro Corp. had been inactive for some time. At a conference held in September 1962 by revenue agents with Walter L. Mims, Bainbridge, and one Petry (who was with an accounting firm that handled the corporation's books and records), there was no information forthcoming that any corporate assets existed which could be used to pay the tax. In March 1963 a corporate financial statement was obtained from Petry, but the information was as of March 31, 1962. The only assets listed from which collection could

theoretically be made were cash, $1,178.68, accounts receivable, $1,-118.30, notes receivable, $23,677.45, and real estate, $1,069.75. There was no indication as to the location of these assets. It quickly appeared that it would be useless to make any effort to collect most of the 19 notes receivable. A schedule indicated that the date of last payment on 10 of the notes had been in 1959 and prior years, and as to 4 of the notes (all dated 1957) the word "none" appears in the schedule under the date of last payment. It seems clear from this record that it would have been utterly futile for respondent to try to collect the Daro Corp.'s taxes by using these so-called assets. Respondent is only required to make all *reasonable* efforts to collect the tax from the transferor. *Sidney Kreps*, 42 T.C. 660 (1964), affd. 351 F. 2d 1 (C.A. 2, 1965); *Anne Gatto, supra.* We feel that respondent has met that requirement under the facts of this case.

We hold, on the basis of the entire record, that petitioner is liable as a transferee of the assets of Daro Corp., to the extent of the pertinent corporate distributions made to him, plus interest, for the tax liabilities and interest due and uncollected from the corporation for the taxable years ended March 31, 1956 and 1957.

*Decision will be entered for the respondent.*